## GORMAN LEONARD COAL CO. v. PENINSULAR STATE S. S. CORPORATION.

## MYSTIC TERMINAL CO. v. SAME.

### Nos. 2797, 2798.

Circuit Court of Appeals, First Circuit.

June 15, 1933.

G. Philip Wardner, of Boston, Mass., for appellants.

Fitz-Henry Smith, Jr., and Thomas H. Walsh, both of Boston, Mass., and Bigham, Englar, Jones & Houston, of New York City, for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is a suit to recover for damage alleged to have been done to the tank-top ceilings and other parts of the steamship Lake Galewood by the Mystic Terminal Company in discharging her. The libelant is the owner of the vessel; the Gorman Leonard Coal Company chartered her to carry a cargo of coal from Newport News to Boston, the charterer to do the loading and discharging. The coal company arranged with the Mystic Company to discharge the steamer at Boston on its account. The libel charges that the discharging was negligently done and inflicted damage on the vessel beyond reasonable wear and tear. The district judge found for the libelant against the Mystic Company as primarily liable, and against the coal company as secondarily liable. Both respondents appealed.

The appeal presents no serious question of law. Neither party objects to the rulings of law on which the case was decided. The contention of the appellant is that the district judge was wrong in his findings of fact. The testimony was greatly in conflict, both as to the condition of the vessel at the time when she was loaded, and as to the damage, if any, done during the discharge. Several of the important witnesses testified orally, and the district judge had the advantage of seeing them on the stand. It was undisputed that, immediately on the completion of the discharge, a written statement of damage was handed by the master of the vessel to the stevedore. The mate of the steamer testified that he remonstrated to the stevedore while the discharge by the Mystic Company was in progress against the roughness with which it was being done. The stevedore denied this testimony. On an official survey two or three weeks later, the steamer was found in a damaged condition. In the interim she had carried other cargoes; and the respondents contended that such of the damage found on the survey as did not antedate the discharge by the Mystic Company had been done in loading and discharging the later cargoes.

Grab buckets weighing about four tons were used by the Mystic Company in discharging the Lake Galewood. It cannot be doubted that the use of such heavy and powerful appliances on a vessel not specially built for carrying coal would be likely to do damage unless they were very carefully handled. If the Mystic Company saw fit to use them, it was bound to see that requisite care was exercised. There was a strong suggestion that the discharge was hurried because it ran into Saturday afternoon. It would serve no useful purpose to go into the details of the evidence and the contradictions. In such a situation the conclusions of the district judge carry much weight (Merchants' & Miners Transp. Co. v. Nova Scotia S. S. Corp., 40 F.(2d) 167 (C. C. A. 1), and we are by no means satisfied that they were erroneous. He carefully discriminated between the various items of damage claimed; and he allowed only those which he was satisfied were caused by negligence in handling the grab buckets. His decree must be affirmed.

The decree of the District Court is affirmed with costs to the appellee in this court.