## MARINE OPERATING CO., Inc., v. LINDGREN, SWINERTON, Inc., et al.

District Court, S. D. New York.

Jan. 18, 1946.

Kirlin, Campbell, Hickox & Keating, of New York City (Edwin S. Murphy and Helen C. Cunningham, both of New York City, of counsel), for libellant.

John F. X. McGohey, U. S. Atty., of New York City (John F. Quarto, of New York City, of counsel), for respondent.

W. Dale Williams, of New York City, for respondent-impleaded.

GALSTON, District Judge.

This libel resulted from damages alleged to have been sustained by the S. S. Maltran and alleged to have been caused by the negligence of stevedores employed by the respondent-impleaded in discharging a cargo from that vessel.

The libellant was a bare boat charterer at a time when a voyage charter was entered into with the respondent, on April 10, 1942, for the transportation of a cargo from Baltimore to Coco Solo in the Canal Zone. The proof disclosed that the vessel was in good condition when it entered on the performance of the voyage charter. The cargo, loaded on board by respondent's stevedores at Baltimore, between April 15 and April 20, 1942, consisted in the main of bags of cement and a larger number of 14 inch iron pipes, each pipe about 40 feet in length and 20 inches in diameter, and weighing between 2 and 2½ tons. On the trip down the vessel stranded off Diamond Shoals at 9:46 A.M. on April 21, but was released without assistance at 3:10 A.M. on April 22. She arrived at Coco Solo on May 2, 1942, and was moored at Naval Pier No. 1 with her starboard side to, and bow outward.

In discharging the cargo the ship's gear was used by the respondent-impleaded. It is claimed by the libellant that the operation was carried on negligently in that the pipes were hauled through the hatches with only one sling, and dropped on the dock. In that one operation the pipe slammed against the hatch coamings and rails of the vessel with damage to the rails, rigging and other installations. The record shows that the ship's officers took no part in the discharge of the cargo, issued no instructions to the stevedores, but protested to the foremen stevedores against the manner in which the cargo was handled.

The pier superintendent and the stevedoring foreman of the United Fruit Company both described the method of unloading the pipe somewhat differently from that testified to by libellant's witnesses. Bailey and Conrad said that the pipes were brought up from the hatches with the use of one strap, then laid on the deck, and from the deck swung to the dock by means of a bridle.

There is no dispute that such would have been a proper method to employ. Indeed the libellant so urges. The hatches were not large enough to enable the pipe to be brought out with bridles, so two steps were necessary in the operation of discharge. The expert testifying for the respondent-impleaded admitted that if it was sought to carry the pipe over the ship's rail from the hold in one operation, without the use of a bridle, that would be an improper method.

Accordingly, in view of the contradiction in testimony concerning the method actually adopted by the stevedores, it is important to consider the nature of the al-

leged damage. The survey showed that as to hold No. 1, there was damage to the hatch coaming on the starboard side, and the guards over steam pipes of the hatch were badly bent; as to hold No. 2, the guard over the oil vent pipe was broken, the hatch coaming on the starboard side out of line, the bulwark rail badly bent on the starboard side, and the steel ladder on the starboard side from mid-ship to main deck broken and bent; as to hold No. 3, the guard over the starboard oil sounding pipe was badly bent. As to hold No. 4, guards on both starboard and port side were damaged, the starboard side of the hatch coaming badly sprung, the fire line on the starboard side abreast of the hatch broken, and the bulwark rail on the starboard side bent; as to hold No. 6, the guard on the oil vent pipe at forward part of the hold was broken off.

■ Without the advantage of seeing the witnesses, determining credibility would be difficult except for the aid given by a study of the items of damage. Whether the method of discharge described by libellant's witnesses or that described by respondent's witnesses is accepted, the fact remains that damage on the starboard side to the rail and hatch coamings was more than mere wear and tear in handling heavy material would warrant. In other words, the nature of the damage spells negligence in handling the cargo. That negligence could have been the result of failing to raise the pipes sufficiently high over the ship's rail; but since there is no evidence as to that, I am forced to conclude that the version given by the libellant's witnesses must prevail. Nor can the fact that the vessel stranded on the way down, with some damage to her bottom and to a vent pipe of No. 3 hatch, explain the rail and hatch coaming damage.

■ Though the libellant is clearly entitled to a decree against the respondent-impleaded, whether the respondents, Lindgren, Swinerton, Inc. et al. are liable is not so clear. The action is in tort and though proved, they did not directly load or unload the cargo, relying wholly on the respondent-impleaded. If there had been a demise, as appears to have been the case in McGeeney v. Moran Towing Corporation et al., 2 Cir., 149 F.2d 791, 1945 A.M.C. 704, they would be at least secondarily liable. See also The Moran No. 10, D.C., 41 F.2d 255. Though in the instant case the voyage charter party is a contract of affreightment and contains no covenant by the charterer to re-deliver the vessel in good condition, it would seem that even in such case the voyage charterer should be held secondarily liable for the negligence of the stevedores whom he employs, Gorman Leonard Coal Co. v. Peninsular State S. S. Corporation, 1 Cir., 66 F.2d 83.

The libellant may therefore have a decree primarily against the respondent-impleaded and secondarily against the respondents. But since part of the damage recited in Exhibit 5 includes some damage to the port side, the matter will have to go to a master for an accounting.

Concurrently herewith appropriate findings of fact and conclusions of law will be filed.